UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUSTIN DANIEL WIRTH,

       Petitioner,

v.                           CASE NO.:  2:21-cv-324-JLB-NPM

SECRETARY,  DEPARTMENT  OF
CORRECTIONS,

       Respondent.

_____/

## ORDER

      This cause is before the Court on a 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Justin Daniel Wirth ("Petitioner"), a prisoner of the Florida Department of Corrections.   (Doc. 1.)   At the Court's direction (Doc. 11), Respondent filed a response to the petition.   (Doc. 13.)   Petitioner did not file a reply.

      After carefully reviewing the pleadings and the entire record, the Court concludes that Petitioner is not entitled to federal habeas corpus relief.   And because the Court resolved the petition on the basis of the record, an evidentiary hearing is not warranted.   See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## I.    Background and Procedural History

      On May 2, 2012, a grand jury returned an indictment charging sixteen-year-old Justin Wirth ("Petitioner") with two counts of first-degree murder and one count of robbery with a firearm.   (Doc. 13-2 at 2–3.)   On December 12, 2014, Petitioner, through defense counsel Kevin C. Shirley ("Counsel"), filed a motion to suppress his

statements to the police.   (Id. at 5–7.)   After an evidentiary hearing (id. at 9–111), the trial court denied the motion to suppress.   (Id. at 113–19.)

Petitioner proceeded to trial on March 1, 2016.   (Doc. 13-2 at 121.)   The jury returned a verdict of guilty as charged in the indictment.   (Id. at 772–76.)   The trial court sentenced Petitioner to two consecutive life sentences on the first-degree murder convictions and a concurrent life sentence on the robbery conviction.   (Id. at 778–88.)   Because Petitioner was a juvenile when he committed the crimes, the court imposed a judicial review of the sentences on the murder counts after 25 years, as required under Florida Statute § 921.1402.   (Id. at 786.) On January 26, 2018, the Second District Court of Appeal ("Second DCA") issued a written opinion finding no reversible error in Petitioner's convictions and affirmed without comment.   (Doc. 13-2 at 913–14); Wirth v. State, 235 So. 3d 1057 (Fla. 2d DCA 2018).   However, the court remanded the case for resentencing on the robbery count because "[Petitioner] was sentenced to life for the robbery count [as a juvenile] without his sentence providing for a meaningful opportunity to obtain release," contrary to Graham v. Florida, 560 U.S. 48, 75 (2010) and Florida Statute § 921.1402(2)(d).   Wirth, 235 So. 3d at 1058.   The state court amended Petitioner's life sentence for robbery to add a judicial review of his sentence after 20 years. (Doc. 13-2 at 918–22.)

Thereafter, Petitioner filed a motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion").   (Doc. 13-2 at 924–55.)   The postconviction court denied the motion without holding an

evidentiary hearing.   (Id. at 1935–78.)   The Second DCA affirmed per curiam

without a written opinion.   (Id. at 2005.)

Petitioner filed his 28 U.S.C. § 2254 petition on April 13, 2021.   (Doc. 1.)

## II.      Legal Standards

### A.      The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a

claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)      resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2)      resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).   In this context, "clearly established federal law"

consists of the governing legal principles, and not the dicta, set forth in the

decisions of the United States Supreme Court at the time the state court issued its

decision.   White v. Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S.

70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court

either: (1) applied a rule that contradicts the governing law set forth by Supreme

Court case law; or (2) reached a different result from the Supreme Court when faced

with materially indistinguishable facts.   Ward v. Hall, 592 F.3d 1144, 1155 (11th

Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an unreasonable application of the Supreme

Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (quoting Williams, 529 U.S. at 406).

The 2254(d) standard is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 572 U.S. at 420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991);

4

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance. *Sellers*, 138 S. Ct. at 1196.

### B.      Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687–88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness <u>and</u> that the deficient performance prejudiced the defense. Id.

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." Id. at 688. In reviewing counsel's performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Proving *Strickland* prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

### III.   Discussion

On April 8, 2012, 16-year-old William Dalton Haley and his mother, Amy Lorah, were shot and killed in their home.   (Doc. 13-2 at 395.)   The perpetrators— Petitioner and Clayton Combs, who were former friends of Mr. Haley—took the victims' gun, a safe, and a cellphone.   In exchange for an agreement allowing him to plead guilty to second-degree murder, Clayton Combs testified at Petitioner's trial.   (Id. at 408.)   Mr. Combs testified that Petitioner initially told him that he wanted to rob Mr. Haley.   (Id. at 412–13.)   But after retrieving a gun belonging to Mr. Combs's father, Petitioner said that he planned to kill Mr. Haley.   (Id. at 412– 13, 415.)   The two carried out the plan by shooting Mr. Haley and Ms. Lorah several times.   (Id. at 418–32.)   After committing the murders, Petitioner took a safe, a gun, and Mr. Haley's cellphone from the home.   (Id. at 433-35, 437.)

After interviewing witnesses, the police developed Petitioner as a suspect and brought him in for questioning.   (Doc. 13-2 at 570-71.)   During an interview with Detective Jeff Brown, Petitioner confessed to murdering the victims.   (Id. at 575– 603.)   Prior to trial, the defense moved to suppress Petitioner's confession on several grounds, including the ground that the police did not notify Petitioner's parents before questioning him.   (Id. at 5.)   The trial court denied the motion to suppress (id. at 113–119), and Petitioner's confession was played for the jury at his trial.   (Id. at 573–602.)

Petitioner raises three grounds in his section 2254 petition.   Each ground was raised in his Rule 3.850 Motion and affirmed by the Second DCA without a written opinion.   (Doc. 13-2 at 2005.)   Therefore, the claims are exhausted, and

(unless noted otherwise) the Court will look through the Second DCA's summary opinion on each claim and presume that the affirmance rested upon the reasons given by the postconviction court.   Sellers, 138 S. Ct. at 1192.

### A.    Ground One

Petitioner claims that Counsel "was constitutionally ineffective [for] failing to inform [Petitioner] as to the ramification of a favorable plea offer given by the state." (Doc. 1 at 3.)   Specifically, Petitioner alleges that Counsel did not inform him that his pretrial jail time of 1420 days would offset the state's 45-year plea offer and also failed to discuss with him a "best interest" plea deal.   (Id. at 4.) Petitioner raised this claim in his Rule 3.850 Motion, and after ordering a response from the state, the postconviction court summarized and denied the claim as follows:

> Defendant argued that counsel was ineffective for failing to inform him of the ramification of the plea offer. Defendant stated that he rejected a 45-year plea offer because counsel did not explain that his jail credit would offset the prison sentence in the plea offer.   Defendant maintained that he would have accepted the 45-year offer had he known his jail credit would reduce the sentence by almost three years.   Defendant alternatively argued that counsel should have informed him that the plea was in his best interest as there was no reasonable theory of defense.
>
> As the State argued, it is not credible that Defendant did not know he would receive credit for time served, nor that Defendant would have accepted the 45-year plea offer merely because he would receive about three years of jail credit.   Defendant had prior experience in criminal cases 09-CJ-2136 and l 1-CJ-5741, in which he would have learned about jail credit.   The plea forms are attached. As set forth below, the record reflects that Defendant was apparently unwilling to accept the 45-year plea offer regardless of the evidence against him, and that

Defendant would not have been swayed by knowledge he would receive jail credit.

Defendant concedes in his motion that there was no reasonable theory of defense.   Defendant did not allege that counsel misadvised him, told him to reject the offer, or that the decision as to whether the plea was in his best interest was anything other than his own.   The record refutes Defendant's allegation that counsel did not discuss whether the plea offer was in his best interest.   At a status conference on July 1, 2014, counsel stated he had provided discovery to Defendant, and needed to review and discuss with Defendant so Defendant could determine what course of action was in Defendant's best interest. At a status conference on July 14, 2014, counsel stated that Defendant wanted him to take some depositions before Defendant made a decision about the plea offer. Defendant thus discussed with counsel what would be in his best interest, after reviewing discovery and directing counsel to take depositions before Defendant made that decision.

Defendant was provided with discovery and reviewed it with counsel, he was aware of the evidence against him, that the motion to suppress was denied and his statement would be used against him, and he was aware of the strength of the State's case.   Defendant, after consultation with counsel on more than one occasion, nonetheless made an informed, independent and voluntary decision to reject the favorable plea offer and risk trial. Counsel's performance was not deficient. Defendant has failed to allege any facts that, if true, would demonstrate either prong of Strickland.

(Doc. 13-2 at 1936–37 (citations to the record omitted, minor alterations for clarity).)

The Second DCA affirmed without a written opinion.   (Id. at 2005.)

Petitioner now seeks federal habeas relief on this claim for two reasons.

First, he argues that the postconviction court erred when it failed to accept the

factual allegations in his Rule 3.850 Motion "as true to the extent they are not

refuted by the record."   (Doc. 1 at 4.)   Next, he argues that the record is "silent and

void as to counsel affirmatively informing Petitioner of a direct consequence regarding the State's plea offer," resulting in "an unreasonable determination of the facts in light of the evidence presented in the [s]tate court postconviction proceeding."   (Id.)   Neither argument entitles Petitioner to habeas relief.

To the extent Petitioner argues that the postconviction court and the Second DCA (by its silent affirmance) erred under Florida law by applying the wrong standard of review or by denying this claim without first holding an evidentiary hearing, the state courts, not a federal court on habeas review, is the final arbiter of state law.   See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (recognizing that "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus"); Anderson v. Sec'y, Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) ("[T]he state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief.").   Therefore, an allegation of state-law error (such as not accepting Plaintiff's Rule 3.850 allegations as true) without a concomitant constitutional error, is not a ground for habeas relief and does not overcome the presumption of correctness afforded a state court's factual findings. See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.").

Next, Petitioner appears to argue that he is entitled to relief because the state court did not address Counsel's alleged failure to inform him of the jail credits. But even if the postconviction court did not specifically find that Counsel

affirmatively informed Petitioner of the jail credits, the court determined that Petitioner's after-the-fact assertion that he was unaware that he would receive jail credit was "not credible," because he had entered into two plea agreements in other cases.   (Doc. 13-2 at 1936.)   Also, the postconviction court discounted Petitioner's assertion that he "would have accepted the 45-year plea offer merely because he would receive about three years of jail credit," and found that Petitioner "would not have been swayed by knowledge he would receive jail credit."     (Id. at 1936.) Therefore, the postconviction court denied this ground on Strickland's prejudice prong, and was not required to consider Counsel's performance on this issue. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . even address both components of the inquiry if the defendant makes an insufficient showing on one.")

And the state court's rejection of this claim for lack of prejudice was not unreasonable.   To demonstrate prejudice when a defendant improvidently rejects a plea, the petitioner "must demonstrate [among other things] a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome," that he would have accepted the offer.   Alcorn v. State, 121 So. 3d 419, 422 (Fla. 2013); see also Lafler v. Cooper, 566 U.S. 156, 163–64 (2012) (explaining that, to show prejudice when a plea is improvidently rejected based on ineffective advice, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not

have withdrawn it in light of intervening circumstances)[.]").   Petitioner argues

that—had he realized he would have received credit for the 1420 days he spent in

jail pending trial—he would have accepted the state's 45-year plea offer.   (Doc. 1 at

4.)   But the postconviction court did not find this assertion credible, and

"[d]etermining the credibility of witnesses is the province and function of the state

courts, not a federal court engaging in habeas review."   Consalvo v. Sec'y for Dep't

of Corr., 664 F.3d 842, 845 (11th Cir. 2011); Martin v. Kemp, 760 F.2d 1244, 1247

(11th Cir. 1985) ("Factual issues include . . . credibility determinations.").

     The state courts' factual findings that Petitioner was aware of the jail credit

and that the credits did not affect his decision to reject the plea eliminate any basis

for this Court to conclude that Petitioner suffered prejudice from Counsel's failure

to advise him about jail credit.   See 28 U.S.C. § 2254(e)(1) ("[A] determination of a

factual issue made by a State court shall be presumed to be correct.")   Moreover,

even if Petitioner was unaware of how jail credits work (a finding not made by this

Court), he knew that he faced life in prison if convicted at trial (Doc. 13-2 at 134)

and was aware of the state's 45-year plea offer.   (Id. at 133.)   A jail credit of less

than four years would have been a minimal reduction from a 45-year sentence.

Given Petitioner's reluctance to accept the state's offer in the face of overwhelming

evidence of guilt, it is implausible to now conclude that the credits would have

prompted Petitioner to accept the plea.

     Petitioner also asserts that, given the magnitude of the state's evidence

against him, Counsel was obligated to "encourage Petitioner to accept the offer in a

firmest manner." (Id.)   In other words, Petitioner argues that Counsel did not sufficiently urge him to accept the 45-year offer.   "During plea negotiations, defendants are entitled to the effective assistance of competent counsel." Lafler, 566 U.S. at 162 (internal quotation omitted).   But Petitioner points to no *per se* rule establishing that defense counsel must "firmly" recommend that a client accept a favorable plea offer.   Petitioner admits that he was aware of: (1) the state's 45-year offer; (2) the evidence against him (which included a co-defendant's testimony and a detailed confession to planning and carrying out two murders); and (3) the maximum sentences (life) he faced if convicted at trial.   Thus, Petitioner had the tools necessary to make an informed decision of whether to accept the offer.   See e.g. Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) ("[C]ounsel need only provide his client [who is considering a plea offer] with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."); Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002) (finding no legal basis for an argument that "counsel has an obligation to 'strongly recommend' the acceptance or rejection of a plea offer"); Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) ("[T]he ultimate decision whether to plead guilty must be made by the defendant. And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer.").

        Finally, as explained by the postconviction court, Petitioner's argument that Counsel did not discuss a "best interest" plea deal is refuted by the record.   At a

July 1, 2014 status conference, Counsel told the trial court that he and Petitioner

were still reviewing the evidence to determine whether accepting the plea would be

in Petitioner's best interest:

> We have discussed [a plea offer].   Mr. Wirth,
> unfortunately his previous counsel had not supplied him
> with any of the materials from the case, so I went ahead
> and printed a copy of all of the materials that Mr.
> Justham had sent me with the exception of some
> photographs and some phone records that I didn't think
> Mr. Wirth needed to be bothered with --
>
>                         . . .
>
> because they're a little monotonous. I need to get back
> and discuss with Mr. Wirth what his review -- following
> his review of the materials what he believes in his -- is in
> his best interest.

(Doc. 13-2 at 1953.)   During the subsequent July 14, 2014 status conference,

Counsel explained to the trial court:

> Judge, I'm here with Mr. Wirth.   He's had time to go over
> his discovery. I was able to get the discovery to him. And
> he and I spoke as recently as yesterday.
>
> The State has an offer on the table. Mr. Wirth's previous
> counsel took some depos, didn't take depositions of. what
> Mr. Justham and I have discussed would be critical and
> essential witnesses.   My client would like me to talk to
> these folks before he makes a final decision.
>
>                         . . .
>
> My client understands that at any point in time Mr.
> Justham and the State Attorney's Office can pull the plug
> on that, and then we're – we're open to the Court or we're
> at trial.   And I think that we're all trying to see if there is
> a way to resolve [the case.]

13

(Doc. 13-2 at 1950–51.)   Finally, on March 1, 2016, immediately before trial, the state told the Court that it had offered Petitioner a 45-year plea deal.   (Doc. 13-2 at 133.)   Petitioner told the trial court that he had discussed the offer with Counsel, that he was aware of the maximum penalties he faced, and that he wanted to stand on his plea of not guilty.   (Id. at 134.)   The record supports a conclusion that Counsel and Petitioner discussed whether a plea was in Petitioner's best interest, but that Petitioner decided to reject the plea offer   The state courts reasonably adjudicated all portions of Ground One, and Petitioner is not entitled to federal habeas relief.

### B.   Ground Two

Petitioner asserts that Counsel was constitutionally ineffective for failing to investigate and call his mother, Cassie Parke, to testify at the hearing on his motion to suppress.   (Doc. 1 at 5.)   He asserts that he received text messages from his mother while he was in the presence of law enforcement officers and that Counsel "failed to call Ms. Parke to testify to the extent of the text messages and that she was not impaired at the time Detective Anderson entered her home inquiring about Petitioner."   (Id. at 6.)   Petitioner raised a similar claim in his Rule 3.850 Motion, in which he argued that Ms. Parke's testimony would have rebutted police testimony that, shortly before Petitioner's police interview, she was too intoxicated to consent to Petitioner's interrogation.   (Doc. 13-2 at 940.)   He asserted that she would have testified to being disoriented by medication and the aggression of law enforcement, and that, had she been informed of the murder charges, she would have denied consent to interrogate Petitioner without her being present.   (Id. at

941–43.)   He attached phone records from his sister's phone account and alleged that the records show he was exchanging texts with his mother while the police were at his home and while he was allegedly being interrogated.   (Id. at 952–54.)

The postconviction court denied this claim on both Strickland prongs.   First, the court concluded that counsel had stated at the hearing on the motion to suppress that it would not be in Petitioner's best interest to call Ms. Parke as a witness during the hearing.   (Doc. 13-2 at 1939.)   The postconviction court concluded that this decision was "clear trial strategy."   (Id.)   The court further found that the attached phone records were unauthenticated as to the phone numbers in question and that, even accepting as true that Petitioner had received texts from his mother while law enforcement were present, "the phone records do not show what the text message was, or that his mother was not impaired."   (Id. at 1939.)   Next, the postconviction court concluded that Petitioner could not demonstrate prejudice for two reasons.   First, the postconviction court noted that, even without Petitioner's confession, there was overwhelming evidence of his guilt. (Id. at 1339–40.)   Second, the court explained that "failure to secure a parent's consent or presence does not require suppression of a minor's statement."   (Id. at 1940 (citing Doerr v. State, 383 So. 2d 905, 906 (Fla. 1980); M.A.B. v. State, 957 So. 2d 1219, 1229 (Fla. 2d DCA 2007)).)   The Second DCA affirmed without a written opinion.   (Doc. 13-2 at 2005.)

A review of the record and applicable law supports the state courts' rejection of Ground Two.   In a pre-trial motion to suppress, Counsel argued, inter alia, that

the police did not notify Petitioner's parents prior to obtaining his statement and that the parents would not have consented to the police speaking to Petitioner. (Doc. 13-2 at 5–6.)   At the hearing on the motion, Detective Joseph Anderson testified that he went to Petitioner's home around 10:30 p.m. on April 13, 2012. (Id. at 34.)   Ms. Parke answered the door and told the police that Petitioner was not home.   (Id. at 35.)   She appeared intoxicated and was slurring her words and staggering.   (Id. at 36, 37.)   She then "dialed" her television remote in an attempt to call her son.   (Id. at 36.)   Shortly thereafter, the police concluded that Petitioner may have been involved in the crime.   (Id. at 48.)   Having been advised of Ms. Parke's condition and that Petitioner was not at his residence, the police issued a BOLO for Petitioner.   (Id.)   On April 14 at 12:01 a.m. (an hour and a half after Detective Anderson's visit with Ms. Parke), Detective Jeff Brown interviewed Petitioner about the murders.   (Id. at 52.)   When questioned by Counsel as to why the police had not contacted Ms. Parke for permission to speak with Petitioner, Detective Brown said that he believed she would be too impaired to give permission at that time.   (Id. at 103.)   After the police testimony, Counsel concluded, without further explanation, that it would not be in Petitioner's best interest to call Ms. Parke to testify.   (Id. at 104.)   Thereafter, the trial court denied the motion to suppress in a written opinion, addressing the police's failure to gain Ms. Parke's permission as follows:

> There was no testimony that Defendant stated a desire for his parents to accompany him, or to be present during any questioning.   There was no testimony that the parents would have wanted to be present, or would have

> denied permission for law enforcement to speak to Defendant.   If a juvenile indicates he wishes his parents present, there must be no questioning until that occurs. See State v. S.V., 958 So. 2d 609 (Fla. 4th DCA 2007).   It is error for police to question a juvenile after his parent has requested to be present.   See Ramirez v. State, 739 So. 2d 568 (Fla. 1999) citing Allen v. State, 636 So. 2d 494 (Fla. 1994).   However, the fact that a parent was not notified or present is only one of the factors for consideration, and does not preclude a finding of voluntariness under the totality of the circumstances. Doerr v. State, 383 So. 2d 905, 906 (Fla. 1980); M.A.B. v. State, 957 So. 2d 1219, 1229 (Fla. 2d DCA 2007).   The Court finds that, since neither Defendant nor his parents requested a parent be present during the interrogation, this factor alone does not render involuntary Defendant's waiver of his rights.

(Id. at 118.)

Presumably, Petitioner now argues that—had Counsel called Ms. Parke to testify at the hearing—she would have testified that she would have denied permission for law enforcement to speak with her son or would have asked to be present at any interview.   But this is merely speculation.   Petitioner does not offer sworn testimony from Ms. Parke detailing what she would have said if called to testify at the hearing.   That omission, standing alone, defeats this claim.   See Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.' ") (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)); see also United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.   A defendant cannot simply state that the testimony

17

would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."); Jones v. State, 845 So. 2d 55, 64 (Fla. 2003) ("Postconviction relief cannot be based on speculative assertions.").

Moreover, the postconviction court reasonably concluded that Petitioner cannot demonstrate Strickland prejudice because—even without Petitioner's confession to the police—there was overwhelming evidence of his guilt.   Namely, Petitioner's co-defendant testified that Petitioner asked him for a ride to the victims' house to kill and rob the victims, and after he was invited inside, Petitioner shot both victims multiple times and stole a handgun and safe.   (Doc. 13-2 at 410, 411–412, 413, 415, 418, 420, 423, 428, 430, 432, 433.)   Payton Iles testified that he purchased a gun from Petitioner later that evening, and Petitioner told him that the gun "had bodies on it."   (Id. at 478)   Given the substantial evidence against Petitioner, even without his confession, he has not demonstrated Strickland prejudice from Counsel's failure to call Ms. Parke as a witness at the motion to suppress.   Petitioner is not entitled to federal habeas corpus relief on Ground Two.

C.    **Ground Three**

Petitioner asserts that the state knowingly presented false testimony through Detectives Brown and Anderson at the hearing on his motion to suppress.   (Doc. 1 at 7.)   He states that the testimony from these witnesses regarding his mother's intoxication and the timeline of his interview with the police was false.   He claims that phone records "establish that [he] was not in custody during the 2 hours and 8 minute period of 11:01 p.m. April 13 and 1:09 a.m. April 14."   (Id.)   Therefore, Petitioner contends, Detective Brown must have lied when he testified that he

18

interviewed Petitioner between 12:01 a.m. and 12:26 a.m. on April 14.   (Id.)
Petitioner also asserts that Detective Anderson's testimony regarding his mother's
(Cassie Park's) state of intoxication shortly before the interview was false.   (Id. at
8.)

Petitioner raised this claim in his Rule 3.850 Motion, and the postconviction
court denied it because Petitioner "did not establish that the proposed testimony
was false, merely inconsistent with **his** version of events."   (Doc. 13-2 at 1940
(emphasis added).)   The postconviction court further concluded that Petitioner had
not established that the state knew the testimony was false.   (Id.)   Finally, the
court found that the evidence was not material because "[Petitioner's] mother's
impairment or the length of the interrogation were collateral issues, and there is no
reasonable probability that the outcome of the motion to suppress hearing or trial
would have been different given the overwhelming evidence of Defendant's guilt."
(Id. at 1941.)

Petitioner now argues that the state courts' rejection of the claim was
unreasonable because the postconviction court did not expressly consider phone
records attached to his Rule 3.850 Motion showing texts between Petitioner and Ms.
Parke during the time that Petitioner was in custody and being questioned by
Detective Brown.   (Doc. 1 at 7.)   Indeed, Petitioner attached a cell phone bill
belonging to Ms. Natasha C. Vail to his Rule 3.850 Motion.   (Doc. 13-2 at 952.)
Petitioner asserted that the bill reflected a joint account for phones belonging to
himself, his sister (Ms. Vail), and his mother (Ms. Parke).   (Id. at 947.)   He further

asserted that the bill showed that he exchanged several texts with his mother during the time he was allegedly being interviewed by Detective Brown.   Even when considering the phone bill's information and the arguments Petitioner made in his Rule 3.850 Motion, the record supports the state courts' rejection of Ground Three.

First, contrary to Petitioner's assertions, the postconviction court <u>did</u> address the phone records (albeit in another claim in the Rule 3.850 Motion).   (Doc. 13-2 at 1939.)   The court discounted the records as follows:

> As to the phone records, the Court notes that the phone records were not authenticated as to the phone numbers in question. Further, even taking the allegations in the motion as true that the phone records show Defendant received a text message from his mother at the time law enforcement were present, the phone records do not show what the text message was, or that his mother was not impaired. **These records [d]o not refute law enforcement's testimony from the hearing on the motion to suppress**.

(Id. at 1939 (emphasis added).)   The state courts' conclusions that Petitioner did not establish (through witness testimony or documentary evidence) that either detective's testimony was false, or that the state knew it was false, were findings of fact and are presumptively correct.   See 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct"); Brown v. Head, 272 F.3d 1308, 1317–18 (11th Cir. 2001) (recognizing, in the context of a Giglio claim, that the state court's conclusion that the witness had not lied was a finding of fact).

Next, to prevail on his <u>Giglio</u>[1] claim, Petitioner must establish that " 'the prosecutor *knowingly* used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material.' " Maharaj v. Sec'y, Dep't of Corr., 432 F.3d 1292, 1312 (11th Cir. 2005) (emphasis in original) (quoting Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir. 1999)). Petitioner does not allege, and a review of his Rule 3.850 Motion does not reveal, that Petitioner authenticated the cell phone bill in any manner, provided evidence showing who owned the numbers in the account, or described the content of the text messages he received.   Rather, Petitioner attached only a photocopied phone bill without affidavits from his mother, sister, or anyone else establishing ownership of the numbers in the bill or describing the content of any text messages exchanged.

Finally, that Ms. Parke sent texts to Petitioner does not establish that she was not impaired during her encounter with Detective Anderson or that she asked to be present during Petitioner's interview with the Detective Brown.   Nor does it establish that Petitioner was not in custody and was not being interviewed when the texts were sent.   "In the <u>Giglio</u> context, the suggestion that a statement may have been false is simply insufficient; the defendant must conclusively show that the statement was actually false."   Maharaj, 432 F.3d at 1313.   Petitioner has not made the requisite showing.

Because neither detective testified that Petitioner did not exchange texts with his mother, the cell phone bill (even if properly authenticated) does not

---

[1] Giglio v. United States, 405 U.S. 150 (1972).

conclusively establish that either detective lied at the suppression hearing. Petitioner's allegations and the attached phone bill are not enough to carry his burden of rebutting by clear and convincing evidence the postconviction court's contrary factfinding.   28 U.S.C. § 2254(e)(1).   Thus, it follows that the state postconviction court's decision that Petitioner failed to establish his Giglio claim is objectively reasonable within the meaning of section 2254(d).   Brown v. Head, 272 F.3d 1308, 1318 (11th Cir. 2001) ("We review the state court's conclusion that there was no Giglio violation for objective reasonableness, not *per se* correctness."). Petitioner is not entitled to federal habeas relief on Ground Three.

## IV.   Conclusion

Based on the foregoing, Petitioner is not entitled to relief on the habeas claims presented here.   The Court has considered all allegations in the petition, and concludes that none warrant habeas relief.

Accordingly, it is **ORDERED** that:

1.   The 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Justin Daniel Wirth is **DENIED**.

2.   The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Petitioner, deny any pending motions as moot, terminate any deadlines, and close this case.

## Certificate of Appealability[2]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Upon consideration of the record, the Court declines to issue a COA. Because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on November 15, 2023.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

SA:   FTMP-2

Copies to:   Justin Daniel Wirth, Counsel of Record

---

[2] Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."